

KING, TILDEN, MCETTRICK & BRINK, P.C.
Attorneys at Law

**Michael W. Whitcher**
Shareholder
Admitted in Massachusetts, Michigan, and New York
mwhitcher@ktmpc.com

350 Granite Street, Suite 2204, Braintree, MA 02184
TEL 617.770.2214   FAX 617.774.1714

October 28, 2022

**VIA ECF FILING ONLY**
Magistrate Judge Ramon E. Reyes, Jr.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11021

Re:   *Allstate Ins. Co. v. Metro Pain Specialists Professional Corporation, et al.*
      No. 1:21-cv-05586-DG-RER (E.D.N.Y.)

Dear Magistrate Judge Reyes:

Plaintiffs Allstate Insurance Company and its affiliates ("Allstate") and Defendants Metro Pain Specialists Professional Corporation ("Metro Pain"), Leonid Shapiro, M.D. ("Shapiro"), Yan Moshe ("Moshe"), Premier Anesthesia Associates PA ("Premier"), and Nizar Kifaieh, M.D. ("Kifaieh") (collectively, "Defendants") respectfully submit this joint letter to advise the Court of the parties' mediation efforts and to address the status of this action.

## I.   RELEVANT BACKGROUND

On July 19, 2022, this Court ordered a stay of discovery so the parties could try to resolve this action through mediation.  An in-person mediation was conducted on September 28, 2022 with Hon. James Francis IV (ret.).  The parties were ordered to submit a joint status report on or before October 28, 2022 to advise about the mediation.

## II.   MEDIATION AND SETTLEMENT STATUS

The parties did not reach an agreement during the September 28 mediation.  The parties made significant progress towards settlement, but ultimately could not agree on all material terms.  However, the parties continued their settlement efforts after the mediation.

### A.   SHAPIRO DEFENDANTS

Allstate reached an agreement in principle with Shapiro and Metro Pain (collectively, "Shapiro Defendants") following the mediation.  The agreement resolves all of Allstate's claims against Shapiro and Metro Pain in this action.  The parties are presently drafting their written settlement agreement, and they expect to complete and execute the agreement within the next thirty (30) days.



B.   **MOSHE DEFENDANTS**

Allstate did not reach an agreement with Moshe, Premier, and Kifaieh (collectively, "Moshe Defendants") during the September 28 mediation. The parties continued negotiating after the mediation but have reached an impasse. Accordingly, Allstate and the Moshe Defendants respectfully request an order lifting the stay to allow discovery to proceed. The parties also request that all scheduling order deadlines be adjusted to account for the length of time this action was stayed. The parties' positions on outstanding discovery issues are set out in the section below.

### III.   PLAINTIFFS' POSITION ON ISSUES TO BE RESOLVED

A.   **MOSHE DEFENDANTS' DISCOVERY DEFICIENCIES**

Allstate served interrogatories and document production requests on Moshe, Premier, and Kifaieh (collectively, "Moshe Defendants") on April 15, 2022. Allstate filed a motion to compel the Moshe Defendants' discovery responses on June 13, 2022. *See* ECF No. 56. Allstate's motion to compel was denied without prejudice in connection with the discovery stay order. Allstate intends to renew the motion to compel when the stay is lifted because the Moshe Defendants have not fully answered Allstate's requests and have not produced all responsive documents. Allstate disputes the Moshe Defendants' characterization of the parties' meet-and-confer efforts discussed below. The Moshe Defendants had ample time to comply with Allstate's discovery requests; they were given extensions and still failed to serve timely responses. Counsel conferred about the dispute by telephone, which is precisely what Local Civil Rule 37.3(a) requires. The Moshe Defendants' reference to *Chow v. Sentosacare*, 2020 U.S. Dist. LEXIS 262275 (E.D.N.Y. 2020) is misplaced to the extent it was decided under an individual practice rule, which goes beyond the terms of Local Civil Rule 37.3(a). Allstate is willing to confer again, but a motion will be needed if the Moshe Defendants refuse to budge on their objections.

1.   **Companies Owned/Controlled by Moshe**

Allstate asked for the name of any companies owned or controlled by Moshe, but he objected and did not respond. The identities of Moshe's other companies are relevant because the Defendants' scheme was carried-out through transactions among a network of companies owned by Moshe or one of his friends or family members. According to law enforcement, Moshe has been a significant actor in the New York Metropolitan area No-Fault fraud arena for a long time.[1] Moshe now owns Hudson Regional

---

[1] Moshe was the subject of several intercepted communications during law enforcement's investigation of a massive No-Fault insurance fraud ring. The investigation initially focused on a clinic located in Westchester County, but quickly expanded to include subjects located throughout New York and New Jersey. The investigation led to numerous indictments including the ones at issue in *United States v. Rose*, No. 1:19-cr-00789-PGG (S.D.N.Y.) and *United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.). A compendium of wiretap records disclosed during the prosecution of *United States v. Rose* are attached hereto at Exhibit 1. Citations to the these records are designated by the bates label affixed to the bottom right-



Hospital and numerous ambulatory surgery centers ("ASCs") in New York and New Jersey, but he also has a long history of controlling medical providers, and using intermediary companies to circumvent the rules intended to prevent illegal ownership of medical providers. Moshe also reportedly holds undisclosed ownership interests in a number of different companies that help support the operation of the Metro Pain enterprise and his network writ large, including transportation companies, diagnostic imaging providers, and other medical PCs that also send patients to the ASCs for unnecessary surgeries and injections.[2]

### 2. Properties Owned by Moshe

Allstate asked Moshe to identify real property in which he holds an ownership interest, but Moshe objected and refused to answer. Moshe's real property ownership is relevant to the extent that such properties were utilized in furtherance of the Metro Pain enterprise. There is evidence that Moshe held ownership interests in the properties where Metro Pain operated from during the relevant period. For example, Moshe was identified as the owner of property located at 910 East Gun Hill Road in Bronx, NY through intercepted communications disclosed during the *Rose* prosecution. *See* Exhibit 1, at p. A998. Metro Pain operated from the same clinic at 910 East Gun Hill Road during the relevant period, which allows the inference that Moshe owned the clinic and installed Metro Pain as a way to develop patients for his ASCs. Other evidence shows how Moshe was willing to organize and fund new illegal clinics so long as he could take 50% of the profits and 100% of the surgery referrals. *See* Exhibit 1, at p. A1316-1317.

### 3. Persons Who Worked for Premier

Allstate asked for the names of the persons hired and paid by Premier, but the Moshe Defendants objected and refused to respond. Allstate is specifically seeking the names of physicians that were employees of Premier. This information is relevant because medical providers are prohibited from collecting No-Fault payments for services provided by independent contractors. *See* N.Y.C.R.R. § 65-3.11; *Gov't Empl. Ins. Co. v. Badia*, 2015 U.S. Dist. LEXIS 35224, *16-17 (E.D.N.Y. 2015). Before a professional service entity may seek No-Fault payments, its physicians must be employees or shareholders of the company. *Gov't Empl. Ins. Co. v. AMD Chiropractic, P.C.*, 2013 U.S. Dist. LEXIS 130695, *3 (E.D.N.Y. 2013). There are serious questions about the relationships between Premier and the treating physicians that are represented as "employees" on Premier's NF-3 bills because there is evidence that Premier paid over $3,000,000 to various staffing agencies in connection with independent contractor physicians that were hired to work for Premier.

---

hand corner of the original filing (an opposition to a defendant's pre-trial motion). Pinpoint citations to the records appear here as "Exhibit 1, at p. A XXX."

[2] An intercepted communication portrays Moshe as the owner of "City Med clinics"—believed to be a mistaken reference to Citimedical I PLLC, which is an entity nominally owned by Moshe's sister (Regina Moshe, M.D.) but actually controlled by Moshe. *See* Exhibit 1, at p. A998.



### 4. Payments

Allstate asked for information and documents concerning monies paid or advanced to Premier, but the Moshe Defendants objected and did not respond. This discovery is relevant to the allegations concerning Moshe's illegal control of Premier. There is evidence that Moshe used Hudson Regional to finance and control Premier's operation. During the relevant period, Moshe transferred over $2,200,000.00 from Hudson Regional into Premier from accounts registered to Moshe's home address. Allstate needs additional discovery because the defendants' prior explanations—that running an anesthesia group inside a hospital is expensive—are incomplete and fail to account for the fact that Premier billed from Moshe's ASCs, which are supposedly separate from Hudson Regional.

### B. DISCOVERY ABOUT THE METRO PAIN ENTERPRISE

Moshe is still liable for the damages caused by the Metro Pain enterprise despite Allstate's settlement with the Shapiro Defendants. Moshe participated in the operation and control of the Metro Pain enterprise and is therefore still subject to Allstate's RICO claims. Accordingly, Allstate needs to conduct additional discovery about the Metro Pain enterprise when the stay is lifted, including the following specific subjects.

### 1. Employees/Contractors/Treating Providers

Allstate needs to know the names of persons who worked for Metro Pain because Metro Pain is associated with numerous persons who have been charged with money laundering, bribery, obstruction, and myriad other crimes in the *United States v. Rose* and *United States v. Gulkarov* indictments. The indicted defendants are accused of subjecting patients to unnecessary and often painful medical procedures for the purpose of fraudulently overbilling insurance companies. The *Rose* defendants located and recruited prospective patients using illegal means. *See* Exhibit 2. The ringleaders of the *Gulkarov* scheme operated and controlled illegal medical clinics in Brooklyn and Queens. *See* Exhibit 3. Metro Pain operated from these illegal clinics during this scheme. Discovery obtained from non-parties also shows that Metro Pain hired and paid some of the criminal actors in the *Rose* and *Gulkarov* schemes, including non-parties Anthony DiPietro (charged in *Gulkarov* for being an illegal clinic controller) and Ana Rivera (a/k/a Melissa Ramos) (pled guilty in *Rose* for role in illegal patient procurement scheme). Metro Pain also hired and paid non-parties Viktoriya Shakarova and Regina Shakarova, who are sisters and also the spouses of Alexander Gulkarov and Roman Israilov—the reputed masterminds of the *Gulkarov* scheme. Allstate intends to pursue this discovery from non-party sources when the stay is lifted.

### 2. Clinic Locations

Allstate needs to know where the Metro Pain enterprise was operated during the scheme. Allstate has developed evidence connecting Metro Pain to the same illegal clinics involved in the *Rose* and *Gulkarov* criminal actions, including the clinics located at: 105-10 Flatlands Avenue in Brooklyn, NY;

4



204-12 Hillside Avenue in Hollis, NY; 205-07 Hillside Avenue in Hollis, NY; and 717 Southern Boulevard in Bronx, NY.  These clinics were hot-spots of fraudulent activity, and have also been the subject of several federal RICO lawsuits.[3]  Metro Pain was installed as the primary medical provider at the clinics and given the responsibility of evaluating patients and referring them for additional treatment.  Metro Pain's position helped facilitate an unlawful referral/kickback scheme, which spawned a multitude of false billing for medically unnecessary services.  In one instance, Metro Pain had license agreements with at least 3 different providers at the same time for the same office space at the same clinic (204-12 Hillside Avenue) even though Metro Pain was already paying the landlord to lease the entire space.  The wiretap records from *Rose* establish Moshe's involvement in running illegal clinics, including clinics where Metro Pain operated from during this scheme.  Allstate intends to pursue this discovery from Moshe and from non-party sources when the stay is lifted.

### 3. Funding Agreements

Allstate needs to discover further information and documents about Metro Pain's funding or advance agreements.  Evidence discovered to date shows that Moshe controlled Metro Pain and its professional fees through a series of "funding" and "financing" agreements, which were designed to strip control from Shapiro while enabling Moshe to siphon the professional fees paid to Metro Pain.  The funding scheme started with Med Capital LLC and was continued with the help of All Star Services Inc., New Pacific Inc., AJ Salvus Inc., and Lake Success Receivable Recovery Inc. (f/k/a NY-NJ Receivable Recovery Inc.).  Med Capital is owned directly by Moshe.  The other funding companies are owned and operated by Moshe's close associates.  Even though many requests were ignored, some subpoenaed non-parties complied with Allstate's requests and produced relevant evidence about the funding arrangements.  The evidence shows that Moshe "invested" his own money into Metro Pain through the funding companies and then used those same companies—with the help of counsel—to gain ownership of Metro Pain's professional fees.  Only a few of the "funding" agreements have been discovered so far, but each one tends to support Allstate's claims that the arrangements stripped control from Metro Pain— in exchange for funding Metro Pain's operating expenses, Moshe obtained the rights to collect the medical fees paid to Metro Pain on pending No-Fault claims and he secured a steady stream of patient referrals from Metro Pain to his New Jersey based ASCs.  These arrangements caused Metro Pain to forfeit its rights to collect No-Fault payments.  Allstate intends to pursue this discovery from Moshe and from non-party sources when the stay is lifted.

---

[3] *See, e.g., Allstate Ins. Co., et al. v. Hollis Novel Comprehensive Med., P.C.*, C.A. No. 1:20-cv-06108-ENV-RER (E.D.N.Y.) (alleging that the clinic located at 205-07 Hillside Ave was operated and managed by unlicensed laypersons); *Liberty Mut. Ins. Co., et al. v. Life Health Care Medical, P.C., et al.*, C.A. No. 1:19-cv-00095-PKC-LB (E.D.N.Y.) (alleging that 717 Southern Blvd housed a "multidisciplinary" clinic operated and controlled by non-physicians); *see also State Farm Mut. Auto. Ins. Co., et al. v. Metro Pain Specialists, P.C., et al.*, No. 1:21-cv-05523-MKB (E.D.N.Y.); *Gov't Empls. Ins. Co., et al. v. Azu Ajudua, M.D., et al.*, No. 1:15-cv-05199-MKB-RLM (E.D.N.Y.).



### 4. Collateral Schedules

Allstate needs to discover the collateral schedules that were involved the Metro Pain funding agreements. The collateral schedules should contain evidence of the assigned No-Fault claims involved in the sham funding agreements. The collateral schedules have substantial probative value to the extent they contain information about the Allstate No-Fault claims involved in the funding scheme. Medical providers are not allowed to transfer assigned No-Fault benefits nor are they allowed to split professional fees with unlicensed persons, but this is precisely what happened because of the funding scheme—i.e., channel Metro Pain's medical fees to companies owned by Moshe. Metro Pain objected to Allstate's request prior to the discovery stay. Likewise, the non-parties subpoenaed by Allstate have either refused to produce the collateral schedules, or have ignored Allstate's subpoenas altogether. Allstate intends to pursue this discovery from Moshe and from non-party sources when the stay is lifted.

### 5. Communications

Allstate needs communications between the participants in the operation and management of the Metro Pain enterprise. There is evidence of direct communications between Moshe and non-party Petr Khaim, one of the illegal clinic owners. *See* Exhibit 1, at p. A1182. There is also evidence establishing the involvement of non-parties Russell Friedman, Esq. ("Friedman") and The Russell Friedman Law Group LLP ("RFLG") in several meetings and communications with Moshe and the criminal actors. *See* Exhibit 1, at p. A1003, A1180-1181. These communications are likely to contain relevant evidence about the operation and management of the Metro Pain enterprise. There is also a compelling need for communications because of Friedman and RFLG's role in running the Lake Success funding scheme. Allstate intends to pursue this discovery from Moshe and from non-party sources when the stay is lifted.

### 6. Lease Agreements

Allstate needs additional discovery about Metro Pain's lease agreements with landlords and other medical providers. Metro Pain paid kickbacks to other providers that also operated from the same clinics, some of whom were part of the Khaim/Gulkarov criminal enterprise. Documentary evidence of the kickback scheme exists in the form of agreements for "licensing fees" between Metro Pain and other providers at an illegal medical clinic located at 204-10-12 Hillside Avenue in Hollis, NY ("Hillside Clinic"). Metro Pain entered into a lease agreement with the landlord of the Hillside Clinic property, but then also entered into a series of licensing agreements with other providers. There was no legitimate business reason for the competing agreements. Metro Pain was already paying nearly $10,000 per month to lease the Hillside Clinic premises, yet the evidence shows that Metro Pain was also obligated to pay licensing fees to three (3) different providers (i.e., Choice Acupuncture, PLLC, All About Chiropractic, P.C., and Spine Care of NJ P.C.) for the use of the same exam room on the very same day (i.e., Fridays from "11-19.00"). Metro Pain's lease was plenary, however, so there were no credible legal reasons for these agreements. Allstate intends to pursue this discovery from non-party sources when the stay is lifted.



### C. NON-PARTY DISCOVERY ISSUES

The Defendants' scheme was facilitated by numerous laypersons, attorneys, medical providers, and other non-parties. In particular, the funding scheme—which enabled Moshe to gain control over Metro Pain's professional fees—was made possible with the help of No-Fault collection attorneys and others. Prior to the stay, Allstate issued subpoenas to the Defendants' non-party associates, but most were met with silence or only partial compliance. Other subpoenas were met with improper blanket objections. Allstate is prepared to file motions to compel in connection with these subpoenas.

#### 1. Funding Companies

Allstate issued subpoenas to the following non-parties seeking documents concerning funding agreements with Metro Pain:

| Name | Subpoena Date | Owner/Representative | Response Status |
|---|---|---|---|
| New Pacific Inc. | 3/2/2022 | Yakov Khodzhayev | Incomplete |
| AJ Salvus, Inc. | 4/13/2022 | Yakov Khodzhayev | No response |
| Revolving Services Inc. | 3/2/2022 | Yan Moshe | No response |
| Med Capital LLC | 3/2/2022 | Yan Moshe | No response |
| All Star Services Inc. | 5/6/2022 | Vadim Dolsky | Incomplete |
| Lake Success Receivable Recovery Inc. | 3/2/2022 | Russell Friedman, Esq. | Incomplete |

The funding agreements are relevant because they were an essential part of Moshe's scheme to control Metro Pain.

##### a. *New Pacific Inc. and AJ Salvus Inc.*

New Pacific initially responded to Allstate's subpoena by producing funding agreements with Metro Pain, along with other records showing that the Law Offices of Gabriel & Shapiro LLC ("Gabriel & Shapiro") transferred Metro Pain's professional fees—totaling over $1,879,623.00—to New Pacific. The funds were paid to New Pacific from an IOLTA account held by the Gabriel and Shapiro firm. New Pacific subsequently retained counsel and stopped complying with Allstate's subpoena even though New Pacific's representative (Yakov Khodzhayev, putative owner) expressly instructed prior counsel to make the disclosures. New Pacific is now represented by the same counsel as the Moshe Defendants. New Pacific informed Allstate that it will move to quash the subpoena when the stay is lifted. However, New Pacific was compelled to comply with a similar subpoena in the matter *State Farm Mut. Auto. Ins. Co.*



*v. Metro Pain Specialists, P.C.*, No. 1:21-cv-5523-MKB-PK (E.D.N.Y.). New Pacific reportedly complied with the subpoena, which sought records concerning funding agreements with Metro Pain. New Pacific's objections to Allstate's subpoena are likely moot in light of these disclosures, and Allstate intends to file a motion to compel when the stay is lifted. As for AJ Salvus Inc., Khodzhayev confirmed ownership of the company while providing New Pacific's initial subpoena response. AJ Salvus was also involved in sham funding arrangements with Metro Pain. Allstate's subpoena to AJ Salvus also sought records about funding agreements with Metro Pain. AJ Salvus has not complied with the subpoena at all. Allstate also intends to file a motion to compel as to AJ Salvus when the stay is lifted.

      **b.**    *All Star Services Inc.*

Allstate asked All Star Services, Inc. ("All Star") to produce documents concerning funding or receivable purchase agreements with Metro Pain. All Star retained counsel to respond to the subpoena. Counsel was supposed to be preparing All Star's subpoena response when the discovery stay was entered. All Star is an entity owned by non-party Vadim Dolsky ("Dolsky"), who is a close associate of Moshe. Allstate has developed documentary evidence that All Star purchased Metro Pain's receivables—entries found in Metro Pain's operating account prove that Metro Pain's receivables were actually purchased and not merely pledged. This is illegal. With the help of the Gabriel & Shapiro firm, All Star collected Metro Pain's professional fees, which is also illegal. Unfortunately, All Star, Dolsky, and the Gabriel & Shapiro firm have not complied with Allstate's discovery requests. However, the allegations in *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists, P.C.*, No. No. 1:21-cv-05523-MKB-PK (E.D.N.Y.) suggest that All Star purchased Metro Pain's accounts receivable for NCV and EMG testing. State Farm alleges that Dolsky paid money into Metro Pain through All Star and then recouped all of it—plus a 50% financing fee—through an escrow account in which Metro Pain's professional fee payments were deposited and then disbursed to All Star. Allstate intends to pursue motion practice to compel All Star's compliance with the subpoena, especially given the evidence of Dolsky's further involvement in the scheme in connection with Lake Success (discussed below). Evidence from Dolsky and All Star will be highly probative because once the Metro Pain-All Star relationship began, Metro Pain was incentivized to bill for as many NCV and EMG tests as possible because Metro Pain's ability to repay All Star was directly conditioned upon its ability to bill and collect No-Fault payments for these tests. This permits the presumption that Metro Pain billed for NCV and EMG tests without regard for medical necessity, which is illegal.

      **c.**    *Lake Success Receivable Recovery, Inc.*

Allstate asked Lake Success Receivable Recovery, Inc. (f/k/a NY NJ Receivable Recovery, Inc.) ("Lake Success") to produce documents concerning funding agreements with Metro Pain. Lake Success only partially complied with the subpoena, and the parties were meeting/conferring on the deficiencies when the stay was entered. Allstate believes Lake Success is improperly objecting and withholding responsive documents. Lake Success was operated by Friedman, the founder of RFLG. Friedman played an important role in this scheme until his death in December 2021. Friedman was Moshe's longtime collection attorney, having represented Moshe and his numerous surgery centers at EUOs and in legal



collection actions. Friedman and RFLG also represented Metro Pain in No-Fault collection actions and proceedings where Shapiro gave testimony about Metro Pain.[4] The relationship between Friedman and Moshe was uncommonly close, and they used the Lake Success entity as a way for Moshe to collect Metro Pain's professional fees. The Lake Success funding scheme began in 2019 when Moshe started feeding money into Lake Success for the purpose of funding Metro Pain. Moshe's money was transferred into Lake Success from several different sources, including monies that belonged to non-parties Excel Surgery Center LLC and Med Capital LLC, both of which are owned by Moshe. Lake Success transferred $3,150,000.00 to Metro Pain from February 2019 through July 2019. The transfers were subject to a 50% "advance fee" under the agreements, meaning that Metro Pain was indebted to Lake Success for $4,725,000.00. The arrangement was structured so that Lake Success was repaid with the professional fees collected by Metro Pain. The scheme worked because RFLG was put in charge of collecting Metro Pain's professional fees, and was also given the ability to trigger late payment penalties against Metro Pain. The evidence shows that Metro Pain's professional fees readily flowed to Moshe or his close associates through Lake Success because Friedman and RFLG represented Metro Pain for No-Fault collections, and when Metro Pain's No-Fault claims were settled with insurers, the proceeds of Metro Pain's bulk settlements—its professional fees—were transferred to Lake Success from RFLG's client trust account. From there, Lake Success distributed the proceeds for Moshe's benefit. Accordingly, the discovery sought from Lake Success is relevant, and Allstate intends to file a motion to compel when the stay is lifted.

### d. *Med Capital LLC and Revolving Services Inc.*

Allstate asked Med Capital LLC ("Med Capital") and Revolving Services, Inc. ("Revolving Services") to produce documents concerning funding agreements with Metro Pain, but they both failed to comply. Allstate intends to move to compel Med Capital's and Revolving Services's responses when the stay is lifted because both entities played a crucial role in Moshe's scheme to gain control over Metro Pain and its professional fees. *See* ECF No. 1 at ¶¶ 183-184. Med Capital is owned by Moshe, while Revolving Services is owned by an individual named Panina Levy a/k/a Panina Leviyev who appears related to Moshe. Metro Pain had "revolving loan" agreements with Med Capital and Revolving Services. These agreements were fueled by Metro Pain's No-Fault receivables, which were pledged as collateral for the amounts "borrowed" by Metro Pain under these financing agreements. ECF No. 1 at ¶ 192. The transactions were characterized as advances or loans, but they were actually illegal investments in Metro Pain. The transactions were purposely mischaracterized to conceal the fact that they were designed to effectuate Moshe's control over Metro Pain and its professional fees. Indeed, the agreement forced Metro Pain to repay Med Capital using the proceeds of No-Fault payments collected by Metro

---

[4] Friedman and RFLG also represented Premier in connection with an EUO conducted by another insurer where Kifaieh admitted that Premier also does not employ the treating providers, which means that Premier submitted false and non-compensable billing to Allstate for independent contractors. Friedman and RFLG also represented Moshe's family members (Rob Alon and Regina Moshe) in connection with matters involving companies registered under their names. Friedman's reach even extended to Khaim, whom law enforcement surveilled attending meetings at RFLG's office in Lake Success, NY while negotiating the potential funding of a new clinic. *See* Exhibit 1, at p. A1173-1183.



Pain. The agreement also required Metro Pain to pay exorbitant fees to Med Capital, which were also funded using Metro Pain's No-Fault monies.

### 2. Collection Law Firms and Billing Companies

Allstate is seeking discovery from the following law firms and billing companies, which were involved in the billing and collection of Metro Pain's No-Fault claims:

| Name | Subpoena Date | Subpoena Due Date | Response Status |
| --- | --- | --- | --- |
| The Russell Friedman Law Group LLP | 4/29/2022 | Yakov Khodzhayev | Incomplete |
| Law Offices of Gabriel & Shapiro LLP | 4/29/2022 | Yakov Khodzhayev | Incomplete |
| The Law Offices of Hillary Blumenthal PLLC | 4/29/2022 | Yan Moshe | Incomplete[5] |
| Drachman Katz LLP | 6/28/2022 | Yan Moshe | No response |

The discovery sought from the law firms is relevant because the firms were involved in collecting Metro Pain's professional fees and transferring them for Moshe's benefit. The collection law firms may also have evidence about other actions taken in furtherance of this scheme. According to the *Gulkarov* indictment, the illegal clinic controllers required the medical providers to retain a specific law firm to represent the providers at examinations under oath ("EUOs"); it is further alleged that the clinic controllers and the collection law firms arranged for the medical providers to give false testimony. *See* Exhibit 3. Moreover, Drachman Katz LLP is a No-Fault collection law firm that was retained by RFLG to help propel the Lake Success funding scheme. Evidence obtained from other sources shows that the Drachman firm collected Metro Pain's professional fees and then transferred the funds to RFLG, who then transferred the funds into a Lake Success account. From there, Lake Success distributed Metro Pain's professional fees for Moshe's benefit.

### 3. Medical Providers and Landlords

Allstate is also seeking discovery from the following non-party medical providers and landlords:

---

[5] Allstate was contacted by counsel and informed that responsive documents would be produced. To date, no responsive documents from the Blumenthal firm have been produced.



| **Name** | **Subpoena Date** | **Response Status** |
|---|---|---|
| Starrett City Medical, PC | 5/18/2022 | No response |
| Hillcrest Medical Care, PC | 5/18/2022 | No response |
| Citimedical I, PLLC | 5/18/2022 | Incomplete |
| CSC Medical, PC | 5/18/2022 | No response |
| Kings Chiropractic Wellness, PC | 5/18/2022 | No response |
| All About Chiropractic, PC | 5/18/2022 | No response |
| Choice Acupuncture, PLLC | 5/18/2022 | No response |
| Physical Therapy of New York, PC | 5/18/2022 | No response |
| New Age Medical of NYC, PC | 5/18/2022 | No response |
| Nile Rehab Physical Therapy, PC | 5/18/2022 | Incomplete |
| Northern Medical Care, P.C. | 5/18/2022 | Incomplete |
| Andrew Nicholas Demas, Lac. | 5/18/2022 | No response |
| James Noberini, D.C. | 5/18/2022 | Incomplete |
| 701-703 McCarter Holding Company, Inc. | 5/18/2022 | No response |
| Roman Plaza, LLC | 5/18/2022 | No response |

Allstate's subpoenas to the medical providers and landlords are aimed at obtaining documents and information relevant to Metro Pain's payment of kickbacks in exchange for patient referrals, which bears directly on the overarching issue of Metro Pain's ineligibility for No-Fault reimbursement. Allstate is seeking discovery about these matters because medical providers are prohibited from paying or accepting kickbacks in exchange for referrals. *See*, *e.g.*, N.Y. Educ. §§ 6509-a, 6530(18), 6531. Allstate has already developed evidence of the kickback scheme in the form of agreements for "licensing fees" between Metro Pain and other providers at an illegal medical clinic located at 204-10-12 Hillside Avenue in Hollis, NY ("Hillside Clinic"). Metro Pain's connections to the Hillside Clinic are significant because this clinic was a hub of fraudulent activity. Evidence from the *Rose* criminal wiretaps show that this clinic was illegally owned and operated in furtherance of the scheme.[6] The evidence sought is relevant to the allegations that Metro Pain was installed as the main tenant at the Hillside Clinic as part of Moshe's effort to expand the reach of his enterprise in New York. Since the lease and license agreements were utilized to conceal illegal kickback or referral payments, compliance with these subpoenas will likely lead to the discovery of relevant evidence concerning the purpose and legitimacy of the relationships between Metro Pain and these non-parties. Accordingly, Allstate intends to pursue motion practice to enforce these subpoenas when the discovery stay is lifted.

---

[6] It bears noting that the Hillside Clinic's prior physician—Azu Ajudua, M.D., nominal owner of Hillcrest Medical Care, P.C.—surrendered his New York medical license on July 23, 2019 following a felony conviction for healthcare fraud.

11



### 4. Professional Staffing Agencies

Professional staffing agencies are a focal point of non-party discovery in connection with Premier because Premier did not actually employ many of the physicians listed on their NF-3 bills; instead, the physicians were contracted or employed by different companies and were supplied to Premier by outside staffing agencies to provide services. This is a critical area of discovery because medical providers are prohibited from collecting No-Fault payments for services provided by independent contractors. *See* N.Y.C.R.R. § 65-3.11. It is well-settled in New York that a professional service entity is not an eligible "provider of health care services" when the services are actually performed by an independent contractor. Allstate has developed evidence that these physicians were represented as "employees" of Premier on its NF-3 bills when, in fact, the physicians were employed by the staffing agency or by another company other than Premier. These misrepresentations were designed to deceive Allstate into believing that Premier was entitled to payment for those services. However, Premier is not entitled to collect No-Fault payments for services performed by independent contractors. To date, Allstate has discovered evidence that Premier paid over $3,000,000 to various staffing agencies in connection with independent contractor physicians that were hired to work for Premier. The records produced by non-party Medical Doctor Associates f/k/a Cross Country Locums—an agency that refers "independent contractor healthcare provider(s)" to providers—prove that Premier falsely identified two physicians (Akhtar Ali, M.D. and Fady Wassef, M.D.) as Premier employees in NF-3 bills mailed to Allstate. Ali and Wassef worked at SCOB (a Moshe-owned ASC) during the relevant period. However, Akhtar and Wassef never once appeared in Premier's payroll records, proving that they were never employed by Premier, which also means that all of Premier's NF-3 bills for Ali and Wassef were false. Allstate is still seeking physician staffing records from non-party Medical Search International, Inc., which has failed to comply with a subpoena *duces tecum* dated May 3, 2022. Because the staffing agencies have relevant evidence related to Premier's use of independent contractor physicians, Allstate intends to pursue motion practice to enforce the subpoena served on Medical Search International, Inc. when the stay is lifted.

### D. AMENDED COMPLAINT

Allstate intends to seek leave to file an amended complaint when the stay is lifted. The amended complaint will add additional parties and claims to this action, including the Moshe ASCs and additional parties involved in the funding scheme. There is substantial documentary evidence that Metro Pain patients were referred to the Moshe ASCs for medically unnecessary injections and surgeries. Metro Pain's patients were subjected to invasive and harmful procedures at Moshe's ASCs even though there was no support for the services based on the patient's subjective symptoms, objective findings, or responses to other tests and treatments. The parties involved in the sham funding agreements are liable for the damages caused by the Metro Pain enterprise because they helped Moshe gain control of Metro Pain and its professional fees.



### IV.     MOSHE DEFENDANTS

####    A.     OVERBROAD DISCOVERY REQUESTS

Allstate's discovery requests served upon the Moshe Defendants are overbroad and made no effort to comply with the Federal Rules of Civil Procedure governing discovery. For example, Allstate demands that Moshe produce all communications and "agreements" with sixty-seven (67) specific individuals and entities, regardless of the subject matter or relevance to this matter. Many other requests are similarly unbounded. Allstate also issued excessive interrogatories. F.R.C.P. 33(1) allows a party to serve "no more than 25 written interrogatories, including all discrete subparts," absent leave of court. Allstate's interrogatories far exceed this allowance when subparts are counted, as the rule requires.

Even worse, Allstate outright refused to meet and confer to narrow the scope of these requests. For example, the Moshe Defendants reached out to schedule a meet and confer the day after serving their responses and objections, and Allstate responded, "there is nothing to confer about on the scope of requests because the time for raising/discussing general objections has long passed." Instead of engaging in a good-faith discussion regarding the scope of their discovery requests, Allstate instead rushed to the court to file a motion to compel without satisfying this Court's requirement to meet and confer in good faith over any discovery disputes. In doing so, Allstate improperly treated the "meet and confer" requirement as a technical one – arguing that the parties conferred because they spoke about discovery on the telephone. *See Chow v. StenosaCare, LLC* 2020 WL 13076003 at *2 (E.D.N.Y. May 29, 2020).

Additionally, and as described in more detail below, Allstate's submission above fails to explain how their overbroad requests for documents and information are relevant to any of the claims or defenses **in this action**, as required by the Federal Rules of Civil Procedure. On top of their desperate attempts to find any support for their claims against the Moshe Defendants (for which they have none), Allstate is blatantly abusing the discovery process for investigatory purposes by demanding documents that have nothing to do with this action. Indeed, Allstate has been blocked from propounding discovery requests that were not even as broad as those propounded in this case. *See Allstate Insurance Company v. All Country, LLC*, 2020 WL 5668956 (E.D.N.Y. September 22, 2020). In that case, Allstate demanded all documents relating to a particular individual, without limiting their request to a particularly category of documents. *Id.* at *3. The court found that such unbounded discovery requests were "nothing more than a fishing expedition." *Id. citing Henry v. Morgan's Hotel Grp., Inc.,* NO. 15-cv-1789, WL303114, at *2 (S.D.N.Y. Jan 25, 2016). The court reasoned that such broad requests would be appropriate "if Allstate were a civil regulatory agency . . . **but it is not, and it is subject to the limitations on discovery**." *Id. at *3*. For these same reasons, Allstate's discovery requests on the Moshe Defendants must be narrowed.

For example, Allstate makes the conclusory assertion that the identity of **all** companies and properties owned or controlled by Moshe are relevant to this case. Allstate, however, fails to explain how the identity of companies or properties that have nothing to do with Metro Pain or Premier Anesthesia ("Defendant Companies") are relevant to any of the claims or defenses in this litigation. Indeed, the locations where the Defendant Companies operated and the companies that worked with the

13



Defendant Companies are both finite, and any request concerning other properties or companies is completely outside the bounds of permissible discovery.

Additionally, Allstate's other demands from the Moshe Defendants set forth above have been, or will soon be, satisfied. For instance, on July 18, 2022, Moshe Defendants produced to Allstate the employment agreements between Premier Anesthesia and its physicians. Further, after the stay of discovery is lifted, Moshe Defendants will provide information about the subsidy Hudson Regional paid to Premier, as is common practice to support service lines that are critical to a hospital's operations, like anesthesia, but cannot cover their expenses based on their own billings. That Premier received a subsidy for providing extensive anesthesia services for Hudson Regional Hospital, but also performed some anesthesia services from Moshe's ASCs is of no consequence whatsoever, and Allstate fails to advance any theory why this arrangement is improper.

### V.     NONPARTY YAKOV KHODZHAYEV

Allstate's submission regarding New Pacific Inc. and AJ Salvus Inc. is riddled with inaccuracies. First, Yakov Khodhayev ("Khodzhayev"), owner of New Pacific, Inc. and AJ Salvus, Inc., never advised that it would quash the subpoena served on Signature Bank, but rather, requested to meet and confer regarding the scope of the subpoena to avoid having to file a motion to quash. Allstate refused to meet and confer, consistent with their refusal to engage in good faith efforts to resolve discovery disputes. Specifically, Allstate served a subpoena requesting all banking records from Mr. Khodzhayev's companies, regardless of their connection to this action. Mr. Khodzhayev seeks to limit this response to documents and information concerning the parties in this action.

Second, Allstate's claim that Mr. Khodzhayev was compelled to and complied with a similar subpoena served by State Farm is entirely false. The State Farm subpoena that Mr. Khodhayev complied with did not request all of Mr. Khodzhayev's companies' banking records, but rather, only requested records concerning the defendants in the case. Allstate's subpoena here, to the contrary, requests all banking records, even those unrelated to Metro Pain, Premier, Moshe, and Shapiro. Thus, contrary to Allstate's disingenuous assertions, Mr. Khodzhayev actually seeks to limit the Signature Bank subpoena so that it is specifically tailored like the State Farm subpoena, *i.e.*, only requests banking records concerning the defendants in this case.

Further, Mr. Khodzhayev hopes that Allstate reaches out to meet and confer regarding any allegedly outstanding productions before filing a motion to quash.



Thank you for your time and attention.

Respectfully submitted,

| | |
|---|---|
| */s/ Michael W. Whitcher* | */s/ Shannon Carroll* |
| Michael W. Whitcher (MW7455)<br>*Counsel for Allstate* | Keith Roberts<br>Shannon Carroll<br>*Counsel for Moshe Defendants* |

*/s/ Kevin Windels*

Kevin Windels
*Counsel for Shapiro Defendants*


cc:     Counsel of record (via ECF only)

15